UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

YANET CHAVEZ,

Plaintiff,

v.

TARGET CORPORATION,

Defendant.

No. 2:25-cv-01603-DAD-CSK

ORDER GRANTING DEFENDANT'S UNOPPOSED MOTION TO TRANSFER VENUE PURSUANT TO THE FIRST-TO-FILE RULE

(Doc. No. 15)

This matter is before the court on defendant Target Corporation's unopposed motion to transfer venue pursuant to the first-to-file rule. (Doc. No. 15.) On July 7, 2025, the motion was taken under submission pursuant to Local Rule 230(g). (Doc. No. 16.) For the reasons outlined below, defendant's motion will be granted.

**BACKGROUND**

**A.    The *Chavez* Action**

On September 30, 2024, plaintiff Yanet Chavez filed a complaint initiating this wage and hour action in the Yolo County Superior Court (the "*Chavez* action" or "*Chavez*"). (Doc. No. 1-1 at 2.) On June 9, 2025, defendant removed this action to this federal court. (Doc. No. 1.) On June 13, 2025, plaintiff filed a second amended complaint. (Doc. No. 8.) Therein, plaintiff alleges the following.

1

Plaintiff is a non-exempt hourly employee for defendant. (Doc. No. 8 at ¶ 8.) Her job involves "a sundry of warehouse duties subject to production targets and quotas." (*Id.* at ¶ 16.) For example, plaintiff alleges that she was required to meet a production quota of at least 100 packages per hour, irrespective of the size or difficulty of the items. (*Id.* at ¶ 61.) Plaintiff's superiors often stated that failure to meet quotas constituted cause for termination. (*Id.* at ¶ 63.) Because of defendant's quotas, plaintiff alleges that she often worked through meal or rest breaks or had her breaks interrupted by supervisory staff. (*Id.* at ¶¶ 45, 72–75.) Defendant's quotas also required the class to remain on call during their breaks, which often resulted in their legally mandated breaks being interrupted or completely missed. (*Id.* at ¶¶ 72–73.) Plaintiff and the class were also instructed to refrain from using the restroom until their designated breaks. (*Id.* at ¶ 67.) Even though defendant's quotas were so demanding that they increased the risk of injury, defendant had a policy of terminating injured employees for "low performance." (*Id.* at ¶¶ 53–55.) When furnishing wage statements, defendant often omitted the total number of hours worked, and failed to list gross and net wages earned. (*Id.* at ¶ 104.) Defendant failed to pay all wages including minimum, regular, overtime, double time, and premium wages to employees upon their termination from employment. (*Id.* at ¶ 113.)

Based on these and other allegations, plaintiff asserts the following six causes of action: (1) Failure to pay all wages due in violation of California Labor Code §§ 204, 226.7, 1194; (2) Failure to provide recovery periods in violation of California Labor Code §§ 226.7, 2100 *et seq.*; (3) Failure to provide accurate and itemized wage statements in violation of California Labor Code §§ 226, 226.3, 1174; (4) Failure to pay final wages upon separation in violation of California Labor Code §§ 201, 202, 203; (5) Unfair Business Practices in violation of California Business and Professions Code § 17200 *et seq.*; and (6) Enforcement of the California Private Attorneys General Act of 2004 ("PAGA"), pursuant to California Labor Code § 2699. (*Id.* at ¶¶ 81–143.)

**B.    The *Medina* Action**

On February 23, 2022, plaintiff Gustavo Medina filed a putative class action against defendant Target Corporation in the San Bernadino County Superior Court alleging violations of

2

the California Labor Code (the "*Medina* action" or "*Medina*").  (Doc. No. 15-3.)  The defendant removed the *Medina* action to the U.S. District Court for the Central District of California (Doc. No. 15-2 at 2 at ¶ 3), and plaintiff filed a first amended complaint in that action which added twelve new named plaintiffs (Doc. No. 15-4).  In that first amended complaint in the *Medina* action, the plaintiffs in that action alleged the following.

Defendant engaged in several unlawful practices that resulted in plaintiffs working without pay.  (*Id.* at ¶ 21.)  For example, defendant interrupted plaintiffs' meal breaks resulting in plaintiffs working while off the clock.  (*Id.*)  Defendant subjected plaintiffs and the class to mandatory temperature checks and questionnaire screenings for COVID-19 prior to clocking in, defendant had a practice of rounding the actual time worked by employees, and defendant performed bag and security checks while the class members were off the clock.  (*Id.*)  Additionally, as a result of the rigorous work schedules that defendant imposed on the class, the class members were unable to either take their 30-minute meal breaks or were not completely relieved of their job duties during their break.  (*Id.* at ¶ 24.)  Defendant failed to furnish accurate itemized wage statements because it omitted gross and net wages earned and failed to properly count all of the hours that the class worked during a given pay period.  (*Id.* at ¶ 110.)  Defendant also failed to pay class members their correct wages including minimum wage, overtime wages, premium wages, and sick pay.  (*Id.* at ¶ 34, 37.)

Based on these and other allegations, the plaintiffs in the *Medina* action allege the following eleven causes of action:  (1) Unfair competition in violation of California Business & Professions Code §§ 17200 *et seq.*; (2) Failure to pay minimum wages in violation of California Labor Code §§ 1194, 1197, 1197.1; (3) Failure to pay overtime wages in violation of California Labor Code § 510; (4) Failure to provide meal breaks in violation of California Labor Code §§ 226.7, 512; (5) Failure to provide rest breaks in violation of California Labor Code §§ 226.7, 512; (6) Failure to furnish accurate and itemized wage statements in violation of California Labor Code § 226; (7) Failure to reimburse employees for necessary business expenditures in violation of California Labor Code §§ 2802; (8) Failure to pay final wages when due in violation of California Labor Code §§ 201, 202, 203; (9) Failure to pay sick wages in violation of California

3

Labor Code §§ 201, 202, 203, 204, 233, 246; (10) Discrimination and retaliation in violation of California's Fair Employment and Housing Act, California Government Code § 12940; and (11) Wrongful termination in violation of public policy (Doc. No. 15-4 at ¶¶ 55–151).[1]  The parties in the *Medina* action have reached a class wide settlement releasing all claims asserted in that case through December 10, 2023.  (Doc. No. 15-2 at ¶ 7.)

**C.      The *Haro* Action**

On February 3, 2025, plaintiff Christopher Haro initiated a putative wage and hour class action against defendant Target Corporation in the Riverside County Superior Court.  (Doc. No. 15-2 at ¶ 13.)  Defendant removed the *Haro* action to the U.S. District Court for the Central District of California on April 3, 2025.  (*Id.*)  The *Haro* plaintiff subsequently filed a second amended complaint in that action, adding Christopher Ruiz as a named plaintiff.  (Doc. No. 15-5.)

In the *Haro* action, plaintiffs assert the following nine causes of action:  (1) Failure to pay overtime wages in violation of California Labor Code §§ 510, 1194; (2) Failure to pay minimum wages in violation of California Labor Code § 1197; (3) Failure to provide meal breaks in violation of California Labor Code §§ 226, 226.7; (4) Failure to provide rest periods in violation of California Labor Code §§ 226, 226.7; (5) Failure to pay all wages owed upon termination in violation of California Labor Code §§ 201, 202, 203; (6) Failure to provide accurate wage statements in violation of California Labor Code §§ 226; (7) Failure to indemnify employees for necessary business expenditures in violation of California Labor Code §§ 2802; (8) Violation of quota laws in violation of California Labor Code §§ 2100 *et seq.*; and (9) Unfair competition in violation of California's Business and Professions Code §§ 17200 *et seq.* (*Id.* at ¶¶ 60–142.)

**D.      The *Alarcon* Action**

On April 9, 2025, plaintiffs Orlando Alarcon and Junjie Tan filed a complaint initiating a putative wage and hour class action against Target Corporation in the San Bernadino County

---

[1] Defendant states in conclusory fashion that plaintiffs' claims 10 and 11 in the *Medina* action were dismissed with prejudice.  Having reviewed the docket in that case (*Medina v. Target Corp.*, 5:22-cv-00805-JGB-SHK, Doc. No. 46, (Dec. 28, 2023)), the court will *sua sponte* take judicial notice that the docket in the *Medina* action reflects that these claims were dismissed with prejudice on December 28, 2023.  *See Where Do We Go Berkeley v. Cal. Dep't of Transp.*, 32 F.4th 852 (9th Cir. 2022) (*sua sponte* taking judicial notice of a district court order).

4

Superior Court.  (Doc. No. 15-6.)  Defendant removed that action to the U.S. District Court for the Central District of California on May 22, 2025.  (Doc. No. 15-2 at ¶ 15.)

The *Alarcon* plaintiffs bring the following nine causes of action:  (1) Violation of the UCL, California Business and Professions Code §§ 17200; (2) Failure to pay minimum wages in violation of California Labor Code §§ 1194, 1197, 1197.1; (3) Failure to pay overtime compensation in violation of California Labor Code §§ 510; (4) Failure to provide meal periods in violation of California Labor Code §§ 226.7, 512; (5) Failure to provide rest periods in violation of California Labor Code §§ 226.7, 512; (6) Failure to provide accurate itemized wage statements in violation of California Labor Code §§ 226; (7) Failure to reimburse employees for required expenses in violation of California Labor Code §§ 2802; (8) Failure to pay wages when due in violation of California Labor Code §§ 201, 202, 203; and (9) Failure to pay sick wages in violation of California Labor Code §§ 201, 202, 203, 233, 246.  (*Id.* at ¶¶ 45–116.)

On June 27, 2025, defendant filed the pending motion to change venue in this case.  (Doc. No. 15.)  On August 4, 2025, plaintiff filed a statement of non-opposition to defendant's motion. (Doc. No. 19.)

**LEGAL STANDARD**

"The first-to-file rule allows a district court to [dismiss, transfer, or] stay proceedings if a similar case with substantially similar issues and parties was previously filed in another district." *Kohn L. Grp. v. Auto Parts Mfg. Miss.*, 787 F.3d 1237, 1239 (9th Cir. 2015).  The first-to-file rule "is a generally recognized doctrine of federal comity . . . ." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94 (9th Cir. 1982).  The rule is "designed to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments." *Church of Scientology of Cal. v. U.S. Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979), *overruled on other grounds by Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987 (9th Cir. 2016); *see also Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991) ("The first-to-file rule was developed to 'serve[] the purpose of promoting efficiency well and should not be disregarded lightly.'") (alteration in original) (citation omitted).  "A district court has significant discretion to apply the first-to-file rule where the record supports application."

*Jiangmen Kinwai Furniture Decoration Co. Ltd v. Int'l Mkt. Ctrs., Inc.*, 719 F. App'x 556, 558 (9th Cir. 2017) (citation omitted).

In determining whether the first-to-file rule applies, courts analyze three factors:  (1) Chronology of lawsuits; (2) Similarity of the parties; and (3) Similarity of the issues.  *Kohn L. Grp., Inc.*, 787 F.3d at 1240.  However, even if all three factors are satisfied, the court may decline to apply the first-to-file rule if it finds that the first-filed action was brought in bad faith, as an anticipatory suit, or evinces forum shopping.  *Alltrade*, 946 F.2d at 628.  Above all, the "'first to file' rule is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration."  *Pacesetter Sys., Inc.*, 678 F.2d at 95.

## DISCUSSION

### A.      Request for Judicial Notice

Before turning to the merits of defendant's motion to change venue, the court addresses its requests for judicial notice.

Defendant requests that the court take judicial notice of:  (1) the complaint filed in the San Bernadino County Superior Court in the *Medina* action; (2) the first amended consolidated class action complaint filed in *Medina* after it was removed to federal court; (3) the second amended complaint filed in the Central District of California in the *Haro* action; and (4) the complaint filed in the San Bernadino County Superior Court in the *Alarcon* action.  (Doc. No. 15-9 at 2.)

Pursuant to Federal Rule of Evidence 201(b), courts may take judicial notice of facts that are "not subject to reasonable dispute" because they:  (1) are "generally known within the trial court's territorial jurisdiction"; or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  F. R. Evid. 201(b).  The court therefore may judicially notice matters of public record, including complaints filed in state and federal court. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018); *see also Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) (taking judicial notice of a complaint filed in state court); *Caliz v. City of Los Angeles*, No. 15-cv-05161-JLS-KS, 2021 WL 3042281, at *5 (C.D. Cal. Apr. 27, 2021), (taking judicial notice of a

6

complaint filed in another federal case), *report and recommendation adopted sub nom. Caliz v. City of Los Angeles*, No. 15-cv-05161-JLS-KS, 2021 WL 3037398 (C.D. Cal. July 16, 2021).

Accordingly, the court will take judicial notice of the complaints filed in the *Medina, Haro*, and *Alarcon* actions.

**B.      The First-to-File Rule**

Defendant contends that transferring this action to the Central District of California pursuant to the first-to-file rule is appropriate because:  (1) this case was filed after *Medina*; (2) the class definition in this action substantially overlaps with the class defined in *Medina*; (3) these cases involve similar issues; and (4) transferring this case serves the underlying purpose of the first-to-file rule.  (Doc. No. 15 at 10–15.)  The court will address each argument in turn.

**A.      Chronology of Suits**

Defendant contends that the first factor weighs in favor of transferring this case to the Central District of California both because *Medina* was filed in state court before *Chavez* was initiated in state court, and *Medina* was removed on May 11, 2022, "more than three years before *Chavez* was removed."  (Doc. No. 15-1 at 11, *id.* n.2.)

The court begins "by analyzing which lawsuit was filed first."  *Kohn L. Grp., Inc.*, 787 F.3d at 1240.  "'Courts should "apply[] the first-to-file rule where the instant action was filed later in time.'"  *Zou v. Mkt. Am., Inc.*, No. 19-cv-01282-LHK, 2019 WL 13218583, at *5 (N.D. Cal. Sept. 12, 2019) (alteration in original) (citation omitted).  Here, *Medina* is undoubtedly the first-filed action because it was originally filed in the San Bernadino County Superior Court on February 23, 2022 (Doc. No. 15-3 at 2), whereas *Chavez* was originally filed in the Yolo County

/////

/////

/////

/////

/////

/////

/////

7

Superior Court on September 30, 2024 (Doc. No. 1-1). Accordingly, the first factor weighs in favor of granting the motion to transfer venue pursuant to the first-to-file rule.[2]

**B.  Similarity of Parties**

Defendant argues that consideration of the second factor weighs in favor of transfer here because the parties in the cases are substantially similar. (Doc. No. 15-1 at 11.) Specifically, defendant contends that Target Corporation is the only named defendant in these actions, that *Medina* includes "at least some—if not most—of the same individuals" in the *Chavez* class, and that, in fact, plaintiff Chavez is a member of the *Medina* class because she has been a distribution center employee of defendant since approximately September 18, 2017. (*Id.* at 11–13.)

The first-to-file rule "requires only substantial similarity" not "exact identity of the parties[.]" *Kohn L. Grp, Inc.*, 787 F.3d at 1240. "[T]he majority of district courts in the Ninth Circuit that have applied the first-to-file rule in the context of a class action have compared the putative classes rather than the named plaintiffs." *Pedro v. Millennium Prods., Inc.*, No. 15-cv-05253-MMC, 2016 WL 3029681, at *3 (N.D. Cal. May 27, 2016) (collecting cases); *Bates-Ferreira v. Swedish Match N. Am., LLC*, No. 2:24-cv-00987-TLN-CKD, 2025 WL 950506, at *3 (E.D. Cal. Mar. 28, 2025) (noting that, in putative class actions, "courts in this circuit are split on

---

[2] Defendant contends that the date of removal informs the analysis in this regard. However, this is contrary to the approach followed by most district courts in the Ninth Circuit. *See e.g.*, *Silva v. First Transit, Inc.*, No. 20-cv-02285-JSW, 2021 WL 2213203, at *2 (N.D. Cal. Mar. 1, 2021) (collecting cases and recognizing that "[m]ost district courts have found the filing date of the removed state court action to be the relevant date for determining the chronology of the actions."); *Hoyt v. Amazon.com, Inc.*, No. 19-cv-00218-JSC, 2019 WL 1411222, at *4 (N.D. Cal. Mar. 28, 2019) ("For purposes of the first-to-file rule involving actions removed from state court, courts in this district consider the timing of the filing of the state court action, not the date of removal."); *SVF Weston Lakeside, LLC v. Certain Underwriters at Lloyds of Lond.*, No. 16-cv-07676-DMG-JPR, 2017 WL 6949285, at *1 (C.D. Cal. Feb. 9, 2017) (same). The court raises this point because defendant also contends that the dates on which the *Haro* and *Alarcon* actions were removed to federal court also supports transferring this case pursuant to the first-to-file rule because both of those actions were removed before *Chavez*. (Doc. No. 15-1 at 10–11) (citing *Horne v. Nissan N. Am., Inc.*, No. 2:17-cv-00436-MCE-DB, 2018 WL 746467 (E.D. Cal. Feb. 6, 2018). The *Haro* and *Alarcon* actions were filed in state court on February 3, 2025 and April 9, 2025 respectively (Doc. No. 15-2 at ¶¶ 13, 16.), whereas *Chavez* was filed in state court on September 30, 2024 (Doc. No. 1-1). Accordingly, this factor does not support a finding that the first-to-rule applies to the extent that defendant relies upon *Haro* and *Alarcon*. Because of this, the court will only consider the *Medina* action in resolving the pending motion.

whether named plaintiffs or putative classes should be compared when analyzing the similarity of the parties under the first-to-file rule.") (citation omitted).  "[P]roposed classes in class action lawsuits are substantially similar where both classes seek to represent at least some of the same individuals."  *Pearson v. Mondelez Glob. LLC*, No. 2:25-cv-01270-WBS-SCR, 2025 WL 2578251, at *2 (E.D. Cal. Sept. 5, 2025) (alteration in original) (citation omitted).  However, a finding that this factor is satisfied is further strengthened in the class action context where the same defendant is present in both actions and plaintiff in the later-filed action is also a member of the earlier-filed class.  *Manu v. Nat'l Collegiate Athletic Ass'n*, No. 2:25-cv-01956-LK, 2025 WL 3140840, at *3 (W.D. Wash. Nov. 10, 2025) ("Thus, the parties are substantially similar because the Defendant is the same in both cases, and Manu is the plaintiff here and a member of one of the putative classes in *Patterson*.").

Here, the *Chavez* class is defined as "all current and former non-exempt employees employed by Defendant in the State of California during the four (4) years prior to the filing of this class action until class certification ("Class Period") who were employed in Target's California Distribution Centers on or after December 11, 2023."[3]  (Doc. No. 8 at ¶ 1.)  In the *Medina* action, plaintiffs seek to represent the following class of employees: "[A]ll individuals who are or previously were employed by DEFENDANT in a California distribution center, including any employees staffed with DEFENDANT by a third party in a California distribution center, and classified as non-exempt employees (the "CALIFORNIA CLASS") at any time during the relevant period (the "CALIFORNIA CLASS PERIOD")."  (Doc. No. 15-4 at ¶ 16.)  The "CALIFORNIA CLASS PERIOD" is further divided into two subperiods:  (1) for claims four and five, the meal and rest period claims, the class period is January 10, 2019 through the date of resolution or trial; and (2) for claims one, two, three, six, seven, and eight, the class period is

/////

/////

---

[3]  Defendant contends that the start of the statute of limitations period in the *Chavez* action "is based on a release negotiated in the settlement of the *Medina* action . . . which runs through December 10, 2023."  (Doc. No. 15-1 at 6.)

9

April 2, 2021 through the date of resolution or trial.[4] (*Id.* at ¶ 17.) As noted above, the parties in the *Chavez* action have reached a class-wide settlement for all claims up to December 11, 2023.[5] (Doc. No. 15-2 at ¶ 7.)

Here, the classes are not identical – *Medina* covers a period going farther back in time than *Chavez* and the class period in *Chavez* extends beyond the settlement cutoff date in *Medina*. Nonetheless, the vast majority of the *Chavez* class is subsumed by the class in *Medina* and will have their claims extinguished if the court approves the *Medina* settlement. *Metoyer v. Tween Brands, Inc.*, No. 15-cv-01007-GHK-DTB, 2015 WL 13908304, at *4 (C.D. Cal. Nov. 4, 2015) ("The putative settlement class period in *Rougvie* encompasses the vast majority of the putative class period here, as mentioned above. Thus, most putative class members in *Metoyer* are also putative settlement class members in *Rougvie* and will have their claims resolved in the settlement, if ultimately approved."). Moreover, both actions are brought against the same defendant, Target Corporation, and plaintiff in *Chavez* is a member of both *Medina* subclasses because she has been employed by defendant from approximately September 18, 2017 to present (Doc. Nos. 8; 15-2 at ¶ 8; 15-4). *See Gomez-Ortega v. Deja Vu-S.F., LLC*, No. 17-cv-06971-LB, 2018 WL 2096328, at *4 (N.D. Cal. May 7, 2018) (concluding that the parties were substantially similar where all of the defendants were named in the previously filed actions and plaintiff was a member of the settlement classes in those actions). Accordingly, consideration of the second factor weighs in favor of transferring this case.

/////

---

[4] These claims are for violations of the UCL; failure to pay minimum wages in violation of the California Labor Code; failure to pay overtime wages in violation of the California Labor Code; failure to furnish accurate and itemized wage statements in violation of the California Labor Code; failure to reimburse employees for business expenses in violation of the California Labor Code; and failure to pay final wages when due and accompanying waiting time penalties in violation of the California Labor Code. (Doc. No. 15-4 at ¶¶ 55–98, 108–123.)

[5] Defendant states that the *Medina* action has been remanded to state court for administration of the class-wide settlement. However, the court's review of the Central District of California docket in *Medina* does not reflect that the court remanded the case to state court. In any event, the Central District of California has not closed the *Medina* action pending before it and, as a result, the court's analysis remains unchanged.

10

**C.      Similarity of Issues**

Defendant contends that the third factor weighs in favor of transferring this case because the class definition in each action is the same, five out of six of the claims asserted in *Chavez* are also raised in the *Medina* action, and the theories of liability running through the overlapping claims are the same or similar in these cases.  (Doc. No. 15-1 at 14–15.)  Specifically, defendant argues that these cases center around the question of whether Target violated the California Labor Code sections covering payment of wages, rest periods, payment of final wages, and wage statements.  (*Id.* at 15.)

Under the third factor, "[t]he issues in both cases also need not be identical, only substantially similar."  *Kohn L. Grp., Inc.*, 787 F.3d at 1240..  "When analyzing whether issues are substantially similar, a court considers if the common facts, taken together, would lead to the same central question between the cases."  *Murphy v. Sprint/United Mgmt. Co.*, No. 2:20-cv-00507-TLN-DB, 2021 WL 5853579, at *8 (E.D. Cal. Dec. 9, 2021); *see also Torres v. Segway, Inc.*, No. 25-cv-05005-BLF, 2026 WL 311504, at *6 (N.D. Cal. Feb. 5, 2026) ("Even where there are differences between the causes of action, the lawsuits are substantially similar where 'the thrust of the lawsuits is identical.'") (citing *Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1297 (N.D. Cal. 2013)).

Here, the plaintiffs in *Chavez* and *Medina* both assert causes of action for:  (1) unfair competition; (2) wage statement violations; (3) unpaid wages owed upon separation and waiting time penalties; and (4) meal and rest period violations.  (Doc. Nos. 8 at ¶¶ 81–129; 15-4 at ¶¶ 55–83, 99–111, 116–123.)  The allegations within these overlapping claims are either identical or center around defendant's alleged unlawful policies or practice.  For example, both actions allege that defendant imposed work schedules—that supervisory staff enforced—which were so demanding that they prevented class members from taking meal and rest breaks as required by law.  (Doc. Nos. 8 at ¶¶ 69–74; 15-4 at ¶¶ 27, 100, 105.)  Both actions also allege that each respective class's wage statements were deficient because defendant failed to list the gross and net wages earned and the applicable hourly rates.  (Doc. Nos. 8 at ¶ 104; 15-4 at ¶ 110.)  Both actions also seek recovery of final payment of wages that were due upon separation and the

11

corresponding waiting time penalties during overlapping periods. (Doc. Nos. 8 at 104–114; 15-4 at 116–123.)

While the *Medina* action appears to assert claims for violations of minimum and overtime wages that are not asserted in *Chavez*, the *Chavez* action has consolidated allegations of overtime and minimum wage violations in its claim for final wages owed upon termination. (Doc. No. 8 at ¶ 113) (alleging that defendant "willfully failed to pay Plaintiff and Waiting Time Subclass Members all their earned wages upon termination including, but not limited to, minimum, regular, overtime, and double time compensation, and premium compensation either at the time of discharge or within 72 hours of leaving Defendant' [sic] employ."); *Williams v. Pac. Mar. Ass'n*, No. 25-cv-09548-JST, 2026 WL 502950, at *2 (N.D. Cal. Feb. 23, 2026) ("However, although the *Phillips* complaint does not contain separate claims for failure to timely pay wages or failure to pay reporting time, it includes allegations that Defendants 'failed to timely pay wages,' and 'failed to correctly calculate . . . reporting time wages owed to [the plaintiffs][.]'") (internal citations omitted); *McColley v. Pac. Mar. Ass'n*, No. 3:25-cv-02372-GPC-MSB, 2026 WL 97995, at *4–5 (S.D. Cal. Jan. 13, 2026) (concluding that issues were substantially similar where one case did not allege a separate cause of action that was present in the other because the former case consolidated those allegations into a different cause of action).

To be sure, there are differences between these actions. For example, in *Chavez* the plaintiff asserts a PAGA claim whereas *Medina* does not. However, "[t]he fact that [an] action brings additional claims does not preclude applying the first-to-file rule." *Arellano v. Ulta Salon, Cosms. & Fragrance, Inc.*, No. 22-cv-00639-JGB-KK, 2022 WL 17128542, at *2 (C.D. Cal. July 15, 2022). *Chavez* also includes separate factual allegations regarding how defendant's practices increased the risk of overheating and work quotas and impeded distribution center employees from taking restroom breaks. Nonetheless, these additional factual allegations and theories of liability do not undermine the substantial similarity between these actions because most of the other issues presented in this action will be resolved through the resolution in *Medina*. *Gonzalez v. Ulta Salon Cosms. & Fragrance, Inc.*, No. 2:22-cv-00363-ABR-AO, 2022 WL 2903146, at *4 (C.D. Cal. June 2, 2022) (concluding that the issues were substantially similar even though the

12

second action included several claims and allegations absent from the first action because the outcome of the first action would "address many of the same issues raised in the" second action); *see also Bates-Ferreira*, 2025 WL 950506, at \*4 ("Even if a plaintiff presents alternative theories compared to another pending action, it does not necessarily prevent the application of the first-to-file rule because common facts may give rise to a central issue between the cases.") (citation omitted).

Finally, it is also the case that the plaintiffs in *Medina* assert two claims that are absent from *Chavez*:  (1) business expenditure reimbursement; and (2) failure to pay sick pay.  (Doc. No. 15-4 at ¶¶ 112–115, 124–131.)  The *Medina* plaintiffs also allege additional facts that they were under-compensated as a result of defendant's bag checks and COVID screeners.  (Doc. No. ¶ 21.) However, these additional claims and theories of liability do not preclude transfer of this case because the thrust of *Medina* still centers around defendant's practices regarding its payment practices of distribution center employees.  *Cf. Gatlin v. United Parcel Serv., Inc.*, No. 2:18-cv-03135-SVW-AS, 2018 WL 10161198, at \*6 (C.D. Cal. Aug. 23, 2018) (concluding that claims arising from defendant's failure to provide meal and rest breaks in one case and imposition of lengthy security checks without compensation in a separate case were substantially both cases centered around the defendant's "practices and procedures regarding payment to employees.").

Accordingly, the court concludes that consideration of the third factor weighs in favor of transferring this case pursuant to the first-to-file rule.

**D.      Purpose of the First-to-File Rule[6]**

Defendants finally argue that transferring this case to the Central District of California serves the first-to-file rule's underlying purpose of promoting economy, consistency, and comity

/////

---

[6]  The court acknowledges that there are a number of exceptions that might preclude application of the first-to-file rule, namely:  (1) bad faith; (2) anticipatory suits; and (3) forum shopping. *Alltrade*, 946 F.2d at 627–28.  However, because defendant does not raise this issue in its motion and plaintiff has filed a statement of non-opposition, the court need not address the equitable exceptions to the first-to-file rule.  *Alvarez v. Safelite Grp., Inc.*, No. 2:21-cv-07874-ODW-AS, 2022 WL 19569839, at \*3 (C.D. Cal. Apr. 15, 2022) ("The Court need not evaluate equitable exceptions to the first-to-file rule, as neither party raised them.").

13

because duplication of the work that the court in the *Medina* action has already performed would unnecessarily burden the courts.  (Doc. No. 15-1 at 15.)

The district court where the second-filed case was filed has discretion to transfer, stay, or dismiss the second-filed action.  *In re Bozic*, 888 F.3d 1048, 1051–52 (9th Cir. 2018).  Transfer "avoid[s] placing an unnecessary burden on the federal judiciary[]" and avoids "the embarrassment of conflicting judgments."  *Young v. L'Oreal USA, Inc.*, 526 F. Supp. 3d 700, 708 (N.D. Cal. 2021) (citing *Church of Scientology*, 611 F.2d at 750); *see also Torres v. Segway, Inc.*, No. 25-cv-05005-BLF, 2026 WL 311504, at *7 (N.D. Cal. Feb. 5, 2026) ("Courts generally prefer transfer under the first-to-file rule where, as here, the claims asserted in the consolidated action in Delaware and the California Action are substantially similar, but not identical.").

In the instant case, transfer presents "potential efficiency gains [that] are particularly heightened where, as here, the class actions involve overlapping claims and class periods."  *Henry v. Home Depot U.S.A., Inc*, No. 14-cv-04858-JST, 2016 WL 4538365, at *4 (N.D. Cal. Aug. 31, 2016).  Moreover, transfer is most appropriate here because plaintiff seeks injunctive relief.  (Doc. No. 8 at ¶¶ 125, 128); *Pedro v. Millennium Prods., Inc.*, No. 15-cv-05253-MMC, 2016 WL 3029681, at *6 (N.D. Cal. May 27, 2016) ("[S]tays are disfavored where, as here, the plaintiff seeks an award of injunctive relief.").

For the reasons addressed above, the court concludes that transferring this action to the Central District of California is appropriate.

## CONCLUSION

Accordingly:

1.     Defendant's motion to transfer venue (Doc. No. 15) is GRANTED;

2.     The court hereby TRANSFERS this action to the United States District Court for the Central District of California;

3.     The court further orders the Clerk of the Court for the Eastern District of California in Sacramento to FORWARD all filings in this action to the United States District Court for the Central District of California; and

/////

14

4.    The Clerk of the Court for the Eastern District of California shall CLOSE this case upon completion of the transfer.

IT IS SO ORDERED.

Dated:    **March 23, 2026**                                    _Dale A. Drozd_
                                                DALE A. DROZD
                                                UNITED STATES DISTRICT JUDGE

15